**OKLAHOMA CITY, a Municipal Corporation, Plaintiff in Error,**

v.

**E. H. TAYLOR and Nellie M. Taylor, Defendants in Error.**

No. 42734.

Supreme Court of Oklahoma.

April 21, 1970.

As Amended and Rehearing Denied June 2, 1970.

Roy H. Semtner, Municipal Counselor, Robert H. Anderson, Asst., Municipal Counselor, for plaintiff in error.

Carroll Freeman, Nathan S. Sherman, Oklahoma City, for defendants in error.

IRWIN, Chief Justice.

Defendants in error, referred to as plaintiffs, were involved in a two-car accident with an employee of the City of Oklahoma City. At the time of the accident, the employee was operating a vehicle belonging to City and was in the course of his employment. Plaintiffs commenced separate actions against the employee and City to recover damages resulting from the accident. The two actions were consolidated and the jury returned a verdict in favor of both plaintiffs against the employee and City. Judgment was rendered in conformity with the verdicts. The employee did not appeal and City has appealed from the order overruling its motion for a new trial.

The first issue to be determined is: Was City, acting through its employee, engaged in a governmental or proprietary function at the time of the accident?

Plaintiffs contend the employee was engaged in a proprietary function of City at the time of the accident and that City is liable for the negligence of its employee. City contends the employee was engaged in a governmental function and that it is not liable for the alleged negligence of its employee.

In City of Ardmore v. Hendrix, Okl., 348 P.2d 497, we said:

"A city has two classes of powers. One class is Legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people. In such functions, a city is not liable for the negligence of its officers or employees. * * * The other class is proprietary, corporate, or quasi private, conferred upon it, not for the purpose of governing its people, but for private advantage of the inhabitants of the city and the city itself as a legal personality. In such functions, the city is liable for the negligence of its officers or employees. * * *."

The only evidence submitted concerning the employment of City's employee and what he was doing at the time of the accident is as follows: He worked for City in its traffic control department, sign and paint division; and he was driving a truck belonging to City and going to 39th and Portland to install some guard rail posts.

In Ardmore v. Hendrix, supra, we held that the regulation of traffic is a governmental function, and in regulating and maintaining traffic control signals a city is performing a governmental function and is not liable for negligence or failure in the exercise of said function.

In City of Ardmore v. Stuchul, Okl., 294 P.2d 308, we held that the maintenance and repair of streets are proprietary functions and a city is liable for the negligence of its employees. See also Lane v. City of Tulsa, Okl., 402 P.2d 908.

Oklahoma City v. Bailey, Okl., 405 P.2d 115, involved the alleged negligence of a policeman and we said that traffic control and police activities are governmental functions and City would not be liable for the negligence of a policeman engaging in traffic control and police activities. However, the policeman was authorized to take the city-owned police car home with him for overnight storage, for the convenience of City, and to return it the following day and we held that the policeman in taking the vehicle to and from his home for overnight storage was acting for and on behalf of City in its corporate or proprietary capacity as distinguished from its governmental capacity.

Oklahoma City v. Bailey, supra, supports the rule that where one of the issues in an action against a city for the alleged negligence of its employee is whether the employee was engaged in governmental or proprietary activity, the employee's activity at the time of the alleged negligence is controlling and not the functions of the department in which employee was employed.

It necessarily follows that the decisive issue presented is whether City's employee was engaged in a governmental or proprietary activity at the time of the accident, and not whether City's operation of its "traffic control department, sign and paint division" is a governmental or proprietary function.

The only evidence concerning the activity of the employee at the time of the accident is that the employee was driving a truck belonging to City, and going north to 39th and Portland "to install some guard rail posts".

In our opinion, guard rail posts, as such, are a part of the physical structure of a city's street system and the installation of guard rail posts is incidental to the maintenance and repair of streets in the absence of evidence to the contrary. There being no evidence that the guard rail posts in the instant action were a part of City's traffic and control division, the installation of such guard rail posts is prima facie evidence that City's employee was en route to perform a proprietary function at the time of the accident. Being a proprietary func-

tion, City is liable for its employee's negligence. See City of Ardmore v. Hendrix, supra.

City next contends the allegations contained in plaintiffs' petition are insufficient to state causes of actions against it. City argues that in an action based on negligence against a city, the petition must set forth with reasonable certainty, the acts in which liability is based and essential facts showing that at the time of the alleged negligence, City was engaged in a proprietary function. City also argues that an activity of a city is presumed to be governmental rather than proprietary; thus, the defense of governmental immunity is not an affirmative defense.

Plaintiffs did not allege that City's employee was engaged in a proprietary activity at the time of the accident nor did they allege facts that would constitute engaging in a proprietary activity. However, City, in its answer, pleaded that its employee was engaged in governmental activity. It appears from the record that the trial was conducted on the theory that the burden was on City to prove that the employee was engaged in a governmental activity instead of a proprietary activity.

In Van Horn v. Van Horn, 193 Okl. 182, 141 P.2d 1006, we said that it is a well established rule that a judgment of a trial court will not be reversed because of defects or omissions in the petition when such defects or omissions are supplied by the proof without objection.

City next contends that the damages awarded are excessive and should be reduced. City argues that the evidence is insufficient to sustain the jury verdict, and the jury obviously acted, not on the basis of the evidence, but on the ages of the plaintiffs, i.e., the 77 years of the husband and the 71 years of the wife. The wife was awarded $5,384.45. The parties stipulated that she suffered bruises and lacerations on the right thigh, right elbow, knee and skull; that she required twenty stitches in the back of her head; that she was

hospitalized for seven days; and that her hospital and medical expense of $384.45 was reasonable and necessary.

In addition to the stipulation, the evidence discloses that she was thrown out of the car onto the middle of the street; that she has had to see her doctor several times after being hospitalized; that she had been and was still very nervous.

The husband was awarded $1,035.13. The parties stipulated that $500.00 was a reasonable value for his car that was damaged in the accident and that $35.13 was a reasonable and correct amount for his glasses that were broken. The husband sought and was awarded $500.00 for his injuries and pain and suffering.

The evidence discloses that the husband was thrown out of his automobile; that his glasses were broken; that he got a whip lash and was sore and stiff for several days.

In Booth Tank Co. v. Symes, Okl., 394 P.2d 493, we held:

"In an action for personal injuries a verdict will not be set aside for excessiveness of damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence or prejudice or has totally mistaken the rules of law by which damages are regulated."

In our opinion, City has failed to show that the verdict and judgment rendered in the instant action are excessive.

The next issue is whether the "Governmental Tort Liability Act", 11 O.S. Supp.1965, Sections 1751–1766, may be invoked in the instant proceeding. The enactment was approved by the Governor on June 28, 1965, and the last section (Sec. 1766, supra) provides that "The effective date of this act shall be July 1, 1965." The accident forming the grounds for plaintiffs' actions occurred on July 14, 1965.

Article 5, Sec. 58, of the Oklahoma Constitution provides, in part:

"No act shall take effect until ninety days after the adjournment of the ses-

sion at which time it was passed, * * * unless, in case of an emergency, to be expressed in the act, * * *."

Although the "Governmental Tort Liability Act" contained the proviso that it would be effective July 1, 1965, such enactment was not enacted as an emergency measure and did not contain an emergency clause.

In Leatherock v. Lawter, 45 Okl. 715, 147 P. 324, we held:

"It is competent for the Legislature to fix a date in the future upon which an act shall become effective, provided that said date is not less than 90 days from the date of adjournment; and in cases where an emergency is declared to exist, they may be made effective from and after their passage and approval."

See also George v. Randels, County Superintendent, 201 Okl. 542, 207 P.2d 248.

The thirtieth Legislature convened on January 5, 1965, and adjourned on July 22, 1965. Under the Constitution, the effective date of its non-emergency acts is October 21, 1965, which is ninety days from the date of final adjournment. Since the "Governmental Tort Liability Act" did not contain an emergency clause, the effective date of such enactment was October 21, 1965, and not on July 1, 1965, as provided in the enactment. It necessarily follows that such enactment was not in force and effect when the accident occurred, and not being in force and effect, it is unnecessary to discuss or consider such enactment in the instant case.

Judgment affirmed.

BERRY, V. C. J., AND DAVISON, WILLIAMS, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurring specially.

McINERNEY, Justice (concurring specially).

I concur in the result of the majority opinion holding the City of Oklahoma City liable for the injury and damage sustained by the Taylors due to the negligence of a city employee. I believe that the factual situation disclosed by the opinion justifies a complete re-evaluation of the doctrine of governmental immunity. Assuming that the employee worked in the department charged with the maintenance and repair of streets and was driving a City truck to help repair a traffic signal, liability for his negligence would not seem to attach to the City. In my opinion, liability for a tort is thus bottomed on too tenuous a legal theory.

The doctrine of municipal immunity for torts in Oklahoma has a judicial rather than constitutional or statutory origin. The doctrine was announced in City of Lawton v. Harkins, 34 Okl. 545, 126 P. 727 (1912). A sound reason for discarding the judicially imposed rule is stated in Hargrove v. Cocoa Beach (Fla.), 96 So.2d 130, 60 A.L.R.2d 1193 (1957). The annotation following Hargrove on page 1198 is a commentary on the general dissatisfaction with the rule of municipal immunity from liability for torts. An excellent discussion of the subject is found in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961), together with the conclusion that the judicial rather than legislative branch of government must determine the continued validity of the rule of immunity.

Abrogation of the doctrine would not relax the application of the standards of negligence, but would merely apply these standards to all tort-feasors. This result seems compatible with the mandate expressed in the Oklahoma Constitution, Article 2, §§ 6 and 7, relating to due process and access to courts of justice. It seems reasonable to me to reconsider and re-evaluate the doctrine of governmental immunity for a municipality, established in 1788 in Russell v. Men of Devon, 2 Term Rep. 671, 100 Eng.Rep. 359, in light of the present day and age. The judicial branch of government pronounced the birth of the doctrine of municipal immunity and should now announce its demise.

**330** ■

The present case seems appropriate to discuss, and possibly change, our decisional law imposing the doctrine of municipal immunity against citizens injured by the negligence of an employee of a city when the employee is engaged in a governmental function. The facts of this case present a clear picture of the artificial basis, in my opinion, on which the doctrine is grounded: whether the employee was installing a guard rail for traffic or a traffic signal. Further, the City was held liable, so no unexpected expenditure is involved if the doctrine of immunity is discarded in this case. And a prospective application can, and should, be given to the opinion, thereby permitting sufficient time for the various municipalities to accommodate themselves to the imposition of future liability for torts.